IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SCOTT R. DUCEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-0691-MJR |
| | ) | |
| JULIUS FLAGG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

REAGAN, District Judge:

Plaintiff Scott R. Ducey, a prisoner acting pro se, sued various Illinois Department of Corrections ("IDOC") officials on February 16, 2005 alleging violations of his constitutional rights. **Complaint at 4–6, *Ducey v. Walker*, No. 05-CV-0102-MJR (S.D. Ill. Aug. 14, 2009).** On September 30, 2008, the District Court severed Plaintiff's claims into four separate lawsuits. ***Ducey*, No. 05-CV-102-MJR, slip op. at 5 (S.D. Ill. Sept. 30, 2008) (memorandum and order).** This case is one of those separate lawsuits. It contains one claim against one defendant—Julius Flagg—for violation of Plaintiff's rights under the First Amendment. Plaintiff specifically alleges that Defendant Flagg violated his First Amendment rights in denying his request to take a paralegal correspondence course while an inmate at Pinckneyville Correctional Center ("Pinckneyville").

### BACKGROUND

Currently pending before the Court is Defendant Flagg's Motion for Summary Judgment. (Doc. 65.) In that motion, Defendant Flagg argues that he is entitled to summary judgment in his favor for three reasons: (1) the Plaintiff failed to exhaust his administrative remedies prior to filing suit as required by law, **see 42 U.S.C. § 1997e(a) (2006)**; (2) the denial of the

correspondence course did not violate Plaintiff's First Amendment rights; and (3) Defendant Flagg is protected by qualified immunity. Plaintiff did not file a response to the Motion for Summary Judgment, but on November 19, 2008, Plaintiff sent a large number of documents to the Court relating to all of the issues raised in his original complaint filed in *Ducey v. Walker*. The Clerk filed these documents in each of Plaintiff's severed lawsuits. Among the documents relevant to this case were a verified "Declaration of Scott R. Ducey" and two hand-copied grievances regarding denial of the correspondence course. (Doc. 81-4, Ducey Decl. 1–8.)

### UNDISPUTED MATERIAL FACTS

The Court finds the following to be undisputed material facts: Plaintiff was an inmate incarcerated at Pinckneyville Correctional Center in 2004; Defendant Flagg was Assistant Warden of Programs during that time. In 2004, Plaintiff sought institutional permission to enroll in the Blackstone paralegal correspondence course. On August 11, 2004, Defendant Flagg sent Plaintiff a memo denying the request and stating that correspondence courses are not allowed at Pinckneyville. (Ducey Decl. ¶ 8.) The first shipment of the correspondence course arrived on October 7, 2004. The materials were not delivered to Plaintiff. Instead, Plaintiff received a Notification of Unauthorized Items. (Doc. 91, Ducey Dep. 56.) A second shipment of course items arrived at Pinckneyville on November 17, 2004. Again, Plaintiff received a Notice of Unauthorized Items instead of the materials. (*Id.*)

*Exhaustion of Administrative Remedies*

On October 7, 2004, the Plaintiff filed a grievance with his counselor regarding the denial of the correspondence course materials. (Ducey Decl. 5–6.) Plaintiff did not receive a response to that grievance. (Ducey Decl. ¶ 7.) On November 15, 2004, Plaintiff filed another grievance with

his counselor regarding the lack of response to his October 7 grievance and the denial of the correspondence course. (*Id.* at 7–8.) He did not receive a response to this grievance either. (*Id.* ¶ 7.)

Plaintiff did not file any appeals of grievances regarding a correspondence course to the Administrative Review Board. (Doc. 91, Anderson Aff. ¶ 7.) No grievances regarding denial of a correspondence course from 2004 appear in Plaintiff's IDOC master file. (Doc. 97-2, Crafton Aff. ¶¶ 3–4.)

***First Amendment Claim***

It is a long-standing policy that inmates at Pinckneyville may not participate in correspondence courses. In the affidavit submitted with the motion for summary judgment, Defendant Flagg averred:

> When I became Assistant Warden of Programs at Pinckneyville, I was advised that Pinckneyville did not allow inmates to take correspondence courses because they required the prison to provide a proctor to administer the exams. I continued that rule during my tenure there. The prison contracts with the school district and college to provide employees to teach GED and vocational courses offered by the prison to the inmates, not to sit with inmates who are taking tests in courses purchased from outside the prison. Further, the prison cannot afford to shift already depleted security staff from their security assignments to proctor exams for inmates every time one of them wants to take a correspondence course.

(Doc. 91, Flagg Aff. ¶ 5.)

Plaintiff claims to have enrolled in and completed a religious correspondence course from the Crossroads Bible Institute in 2004. (Doc. 91, Ducey Dep. 58.) Defendant Flagg was not aware that Plaintiff was participating in the course. (Flagg Aff. ¶ 7; Ducey Dep. 59.) The packages of Bible course materials were not stopped by the mailroom; they looked like regular shipments of religious materials. (Ducey Dep. 59–60.) The Bible correspondence course did not require proctored

3

exams. (*Id.* at 59.)

Plaintiff claims that another inmate, Patrick Brown, took a correspondence course while at Pinckneyville to become a peer educator. (*Id.* at 60–61.) The course required exams by proctor (*Id.* at 61.) Defendant Flagg clarified that the course was not a traditional correspondence course, but a program offered directly through the IDOC to train inmates to be peer educators about HIV and sexually transmitted diseases. (Flagg Aff. ¶ 9.)

***Pavey Hearing***

Because Defendant Flagg's affirmative defenses and motion for summary judgment raised the question whether Plaintiff exhausted his administrative remedies prior to filing suit, United States Magistrate Judge Donald G. Wilkerson held a hearing in the matter pursuant to *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008)**, on August 7, 2009.[1]

At the hearing, Plaintiff admitted that he did not appeal any grievances to the ARB. He argued that he received no responses to the grievances filed at the first level of the process, thus he had nothing to appeal. At that point, he argued, he had exhausted his administrative remedies because he could not go any further in the established grievance process. (Doc. 98, *Pavey* Hr'g Tr. 6.) In support of Plaintiff's argument, the Court found among the exhibits submitted on November 19, 2008, two hand-copied grievance forms. The first, dated October 7, 2004, complains of Defendant Flagg's denial of Plaintiff's request to take the correspondence course. (Ducey Decl. 5–6.) The second, dated November 15, 2004, reports that Plaintiff received no response to the October 7, 2004, grievance and grieves Defendant Flagg's denial of the correspondence course. (*Id.* at 7–8.)

---

[1] In the order setting the hearing, Judge Wilkerson specifically granted the parties sixty days to file additional briefs, affidavits, or exhibits relevant to the question of exhaustion. (Doc. 83.) Plaintiff did not file any additional documents with the Court prior to the hearing.

Defendant argued that Plaintiff's failure to file any appeals with the ARB indicates that Plaintiff did not properly grieve the denial of the correspondence course. (*Pavey* Hr'g Tr. 4.) Defendant Flagg also disputed the authenticity of the two hand-copied grievances because they contained no markings or signatures indicating when or if they were received by any IDOC official and pointed out that Plaintiff was not able to identify the counselor to whom he submitted the grievance forms. Finally, Defendant argued that a search of Plaintiff's master file, which would contain copies of any grievances ever filed with the IDOC, found no grievances regarding denial of a correspondence course during 2004. (Doc. 97.)

## LEGAL ANALYSIS

### *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

**42 U.S.C. § 1997e(a)**. Exhaustion of available administrative remedies is a precondition to suit. ***Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004);** see also ***Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534–35 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).** Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See **Jones v. Bock**, **549 U.S. 199, 216 (2007)**; **Dole v. Chandler**, **483 F.3d 804, 809 (7th Cir. 2006).** The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may

file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. **Ill. Admin. Code tit. 20, § 504.810 (2009), 20 IL ADC 504.810 (Westlaw).** The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* **§ 504.830, 20 IL ADC 504.830 (Westlaw).** An inmate may appeal the decision of the CAO in writing within 30 days. *Id.* **§ 504.850, 20 IL ADC 504.850 (Westlaw);** *see also Dole***, 438 F.3d at 806–07.**

An inmate is required to exhaust only those administrative remedies available to him. ***See* 42 U.S.C. § 1997e(a).** The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. ***Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).** The availability of a remedy does not depend on the rules and regulations as they appear on paper, but "whether the paper process was in reality open for the prisoner to pursue." ***Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009).** If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. ***See Wilder*, 310 F. App'x at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).** An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance, *see Kaba***, 458 F.3d at 684**, but an inmate "cannot be faulted for not knowing how best to respond to the prison authorities' inaction," *Wilder***, 310 F. App'x at 14**.

Plaintiff argued at the hearing that after he received the memo from Warden Flagg denying him participation in the correspondence course, in compliance with IDOC policy, he filed a grievance with a counselor. When he received no response, Plaintiff filed a second grievance with

a counselor. The Court agrees with the Defendant that these grievances are of limited evidentiary value because they are hand copies which contain no signature or indicia of receipt; they could have been created at any time. The Court is aware, however, that prison officials can easily thwart an inmate's attempt to exhaust administrative remedies simply by failing to respond to his or her grievances. After an inmate gives a document to a prison official, that inmate has no control over what happens to it. He or she must trust that the prison official will handle it in accordance with the prison guidelines and procedures.

The Seventh Circuit law is clear that in a situation where an inmate's grievances were not responded to, further remedies become "unavailable," and the inmate is deemed to have exhausted. Plaintiff avers that he filed the grievances, yet the IDOC has no record of them. The determination whether Plaintiff exhausted his administrative remedies, then, boils down to a question of credibility.[2] Based on the evidence in the record and the testimony and arguments at the hearing, the Court finds credible Plaintiff's statement that he filed grievances but never received a response to them. Thus, further administrative remedies became "unavailable" to Plaintiff. For purposes of 42 U.S.C. § 1997e(a), the Plaintiff is **deemed to have exhausted** all available administrative remedies.

***Summary Judgment Standard***

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the

---

[2]This determination is based on the Seventh Circuit's holding in *Pavey v. Conley* that the court, not the jury, should be the trier of fact on questions whether a prisoner plaintiff has exhausted his administrative remedies. **544 F.3d 739, 742 (7th Cir. 2008).** District courts have been instructed to resolve the question of exhaustion early in the case, prior to discovery on the merits. *Id.* Here, Defendant raised the question of exhaustion in its motion for summary judgment filed prior to the *Pavey* hearing. Even though Defendant raised the question of exhaustion on summary judgment, the Court makes a factual determination as directed in *Pavey* instead of analyzing the claim under summary judgment standards. *See* **Fed. R. Civ. P. 56.**

moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);** *see also **Ruffin–Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).** The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970);** *see also **Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).**

> An opposing party has an obligation to respond to a motion for summary judgment. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**Fed. R. Civ. P. 56(e)(2);** *see also **Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003) (summary judgment is proper when plaintiff's case consists only of "factually unsupported claims"; when faced with evidence presented by moving party, plaintiff cannot rest upon pleadings alone, but must demonstrate specific facts that indicate existence of "genuine issue for trial").**

The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." ***Outlaw v. Newkirk*, 259 F.3d 833, 837 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)).** After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific

facts showing there is a genuine issue for trial." **Fed. R. Civ. P. 56(e)(2).** The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, **477 U.S. at 324.**

Affidavits filed in support of or opposed to summary judgment must be based upon the personal knowledge of the affiant. *See* **Fed. R. Civ. P. 56(e)(1).** "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, **337 F.3d 767, 772 (7th Cir. 2003) (quoting** *Visser v. Packer Eng'g Assocs., Inc.*, **924 F.2d 655, 659 (7th Cir. 1991));** *see also Witte v. Wis. Dep't of Corr.*, **434 F.3d 1031, 1037 (7th Cir. 2006) (affidavit merely repeating unsupported allegations in complaint was not a statement based upon personal knowledge "that may properly be considered in an affidavit");** *Weeks v. Samsung Heavy Indus. Co.*, **126 F.3d 926, 939 (7th Cir. 1997) ("[A] plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.").**

*Violations of the First Amendment*

In the complaint, and exhibits submitted on November 19, 2008, Plaintiff alleges that Defendant Flagg's denial of the correspondence course was content-based, and therefore a violation of his First Amendment rights. He stated that other inmates at Pinckneyville were allowed to take correspondence courses, and that he himself took a religious correspondence course in 2004. Thus, Plaintiff alleges, Defendant Flagg's denial of the paralegal correspondence course was arbitrary and

constituted a denial of his First Amendment rights.

The law is well-established that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To pass constitutional muster, there must exist a rational connection between the regulation and the legitimate government interest asserted. *Id.* Prison regulations that restrict an inmate's rights under the First Amendment must be applied neutrally, "without regard to the content of the expression." *Id.* at 90 (citing *Pell v. Procunier*, 417 U.S. 817, 828 (1974)). The Supreme Court has determined that prison concerns regarding both institutional security and the allocation of resources are legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352–53 (1987); *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) ("Both security and economic concerns are legitimate penological demands.").

Defendant Flagg avers in an affidavit submitted with the motion for summary judgment that correspondence courses are not allowed at Pinckneyville Correctional Center for two main reasons: (1) the prison already provides a college program for inmates and (2) the prison cannot provide personnel to proctor exams without incurring additional costs or transferring security staff, which threatens the safety and security of the institution.

The crux of Plaintiff's argument is that Defendant Flagg's decision to deny the correspondence course was based upon its content, in violation of the First Amendment. The only evidence Plaintiff offers in support of this argument is his signed declaration in which he states "Defendant Flagg denied Plaintiff's participation in Blackstones' program based solely on course content and not for reasons of institutional safety and security or the need of a proctor which would deplete the security staff from other assignments, as Defendant Flagg contends." (Ducey Decl. ¶ 6.)

This statement is not based on personal knowledge as required by Rule 56(e). In Plaintiff's view, the course in which he wanted to enroll would not have caused any threat to the safety or security of the institution. From that premise, he infers that Defendant Flagg's denial must have been based upon the course's content. This is an unreasonable inference. Defendant Flagg avers that the policy at Pinckneyville was that no correspondence courses of any kind were allowed "because they required the prison to provide a proctor to administer the exams." Defendant Flagg's denial of Plaintiff's request was based upon this established rule. Plaintiff has not come forward with any evidence, aside from his own uncorroborated statement, that would tend to show Defendant Flagg's denial of the Blackstone course was based upon anything other than the established institutional rule. As such, Plaintiff has not demonstrated a genuine issue for trial that the denial was content-based and thus violated the First Amendment. Accordingly, Defendant Flagg's Motion for Summary Judgment (Doc. 65) is **GRANTED** on this point.

*Qualified Immunity*

The Seventh Circuit has expressly ruled that in a § 1983 case, where no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity. ***Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) (citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir. 1995)).** Because this Court has concluded above that Defendant Flagg did not violate Plaintiff's constitutional rights, it is thus unnecessary to determine whether he is entitled to qualified immunity.

## Conclusion

For the reasons set forth above, the Court finds that Plaintiff Scott R. Ducey exhausted his administrative remedies prior to filing suit. Defendant Flagg's Motion for Summary

Judgment is **GRANTED** on the merits. The Court DIRECTS the Clerk of Court to enter judgment in favor of Defendant Flagg against Plaintiff Ducey. The case is now closed.

IT IS SO ORDERED.

DATED this 23rd day of September, 2009.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge
